UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-21634-BLOOM**

MATTHEW ALEXANDER KING,

     Plaintiff,

v.

WARDEN CARLTON,

     Defendant.

_____/

**ORDER OF DISMISSAL**

**THIS CAUSE** is before the Court upon a *sua sponte* review of the record. On August 11, 2021, Plaintiff Matthew Alexander King's ("Plaintiff") filed an Amended Complaint for Violation of Civil Rights, ECF No. [36] ("Amended Complaint").[1] The Court has carefully reviewed the Amended Complaint, the record in this case, the applicable law, and is otherwise fully advised. For reasons set forth below, the Complaint is dismissed without prejudice and all other pending motions are denied as moot.

## I.    FACTUAL BACKGROUND

On April 28, 2021, Matthew Alexander King, a convicted felon, filed a *pro se* Petition pursuant to 28 U.S.C. § 2241 seeking damages arising from constitutional challenges to the

---

[1] The docket reflects that Plaintiff simultaneously filed two amended complaints, the instant Amended Complaint, see ECF No. [36], and a pleading titled "Civil Rights Complaint," *see* ECF No. [35]. The latter was signed on July 2, 2021 but mailed on August 5, 2021. ECF No. [35] at 3-4. The Amended Complaint was signed on May 26, 2021 but mailed on August 11, 2021. ECF No. [36] at 11, 18. Thus, under the Mailbox Rule the court construes the Amended Complaint as the operative filing since it did not incorporate by reference Plaintiff's original pleading. Additionally, a review of the "Civil Rights Complaint" reveals that it does not comply with Local Rule 15.1. *See* ECF No. [35] at 2; *see also* S.D. Fla. L.R. 15.1 (when leave to amend is granted, a plaintiff "may not incorporate any prior pleading by reference."). Thus, the "Civil Rights Complaint" is not compliant with the Local Rules nor does it comport with federal rules governing such filings. Thus, the Court treats the Amended Complaint as the operative complaint and considers only the allegations raised therein.

conditions of his confinement, rather than execution of his sentence. ECF No. [1]. As a result, the Court determined that the Petition was an improperly filed federal habeas corpus petition. Rather than dismiss the Petition, the Court granted Petitioner leave to file a civil rights complaint. *See generally* ECF No. [4].

As a result, now before the Court for screening under the Prison Litigation Reform Act ("PLRA") is Plaintiff's *pro se* amended civil rights complaint ("Amended Complaint") pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[2] ECF No. [36]. Plaintiff sues Defendants FDC Warden Eugene Carlton, FDC Captain J. Weirich, FBI Agent John Gill, and the United States Attorney's Office (the "Defendants") in their official capacity. ECF No. [36] at 2-3.

Plaintiff complains of several different incidents. First, he alleges FBI and Miami-Dade Police agents arrested him on June 26, 2018. *Id.* at 12. "Once I was placed in a police car[,] I immediately invoked my constitutional right to counsel prior to any questioning by law enforcement. This was recorded on two police body cameras." *Id.* Plaintiff invoked his right to counsel again after he arrived at Miami-Dade Police Station Five and was told he would "be given an opportunity to speak with [counsel]." *Id.* After being informed that Plaintiff invoked his right to counsel, FBI Agent John Gill and Miami-Dade Detective Parker approached Plaintiff in his

---

[2]  In *Bivens*, the United States Supreme Court recognized for the first time an implied private action for damages against federal officers for violations of certain constitutional rights. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). A *Bivens* action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under *Bivens* must show the violation of a valid constitutional right by a person acting under color of federal law. Accordingly, the proper defendants in a *Bivens* claim are the federal officers who allegedly violated the plaintiff's constitutional rights, not the federal agency which employs the officers. *FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994).

holding cell and "proceeded to threaten [Plaintiff] into answering their questions." *Id.* Plaintiff continued to invoke his right to counsel but was told by Gill, "You're not getting [expletive]." *Id.* Gill threatened Plaintiff's safety and the safety of his family, telling Plaintiff that he would personally place Plaintiff's one-year-old daughter in foster care. *Id.* Plaintiff, who had never been arrested before, states that he "felt as if [he] had no choice but to comply." *Id.*

Plaintiff alleges that Gill and "three other Miami-Dade detectives also forced/coerced a false confession" to a pending state court case. *Id.* The United States Attorney's Office ("USAO") attempted to hide the violation of Plaintiff's rights by omitting the body camera footage from discovery. *Id.* According to Plaintiff, "[t]he camera footage was obtained eight months after [his] arrest. *Id.* Plaintiff asserts this act violated "protocol, ethics, [and] laws enforced under *Brady v. Maryland* [and] the Constitution." *Id.*

Plaintiff further alleges that on or about August 5, 2019, a "[W]alsh assignment" was placed on Plaintiff's Bureau of Prisons email account. *Id.* at 13. The assignment "was ordered by the FBI [and] the United States Attorney's Office" in violation of Plaintiff's Fourteenth Amendment Due Process rights. *Id.* Plaintiff contends that it has hindered him from communicating directly with his defense counsel. *Id.* To communicate with his defense counsel, Plaintiff must instead rely on handwritten letters and legal calls and visits, "[w]hich are often delayed by BOP staff." *Id.* When Plaintiff has received his legal mail, it has often already been opened in violation of attorney client privilege. *Id.* Plaintiff also argues that the designation is "a misuse of the [W]alsh [A]ct which was intended for sex crimes of which [he is] not indicted for." *Id.*

Plaintiff states that on October 4, 2020, he was placed in the FDC's Special Housing Unit ("SHU"). *Id.* Captain J. Weirich and two non-parties, Lieutenant Arroyo and Operations Lieutenant Neo, told Plaintiff that the FBI and USAO ordered his placement in the SHU in order

to monitor his communication activities. *Id.* Plaintiff argues that because the SHU placements are intended for "disciplinary purposes," his placement in the SHU was an improper and "an unwarranted act of retaliation" in violation of his constitutional rights. *Id.* at 13-14. In the SHU, Plaintiff's communication with his attorney and access to the law library are limited. *Id.* at 14.

Plaintiff states that while in the SHU he has experienced "constant harassment by both FDC officers [and] administrative staff" causing him stress, anxiety, and depression. *Id.* Plaintiff describes three separate incidents of harassment. The first occurred in November 2020 when Captain J. Weirich refused to allow Plaintiff to make an emergency call to his family after his grandfather passed away. *Id.* The next incident involved a "mentally handicapped inmate who had gotten into a fight with another inmate two hours prior" being placed in Plaintiff's cell. *Id.* Plaintiff was told by another officer that Captain J. Weirich ordered the housing arrangement. *Id.* After one night, Plaintiff notified an officer that he felt threatened and Plaintiff was removed from the cell. *Id.* at 15. Plaintiff told Captain J. Weirich that he could have been assaulted or killed, but he laughed and told Plaintiff, "[t]hat's no big deal, no one care [sic]." *Id.* Finally, in March 2021, Plaintiff notified FDC administrative staff that he was a Jehovah's Witness and required unleavened bread and red wine in order to observe Passover. *Id.* Plaintiff's request was denied. *Id.* Administrative staff informed him that his "religion was not approved for such items" in violation of his religious freedom. *Id.*

Plaintiff also asserts that the conditions in the SHU are "absolutely inhumane." A majority of the showers are covered in mold and mildew and there is "little-to-no hot water," increasing the risk that an inmate could catch pneumonia once he returns to his "frigid" cell. *Id.* at 16. Plaintiff complains that the staff has not changed the linens in the SHU in at least five months. *Id.* Additionally, Warden Carlton and Captain J. Weirich limit food rations to the SHU; consequently, Plaintiff's weight has dropped from 155 lbs. to 119 lbs. *Id.* at 14. They also limit hygiene access

4

and personal care products, which have caused Plaintiff to have acne breakouts and hair loss. *Id.*

Those discrete incidents in the SHU, along with the existing conditions, have caused Plaintiff stress and depression. *Id.* at 15. Plaintiff states that other inmates have undergone similar harassment. In February 2021, because of the "constant harassment," two other inmates committed suicide, but the suicides were "covered up by the administrative staff at FDC Miami." *Id.*

In light of the foregoing, Plaintiff seeks his constitutional rights "be upheld, hot food, [and] fair treatment." *Id.* at 5. He also seeks $100 million in compensatory damages. *Id.*

## II.    LEGAL STANDARD

Plaintiff is proceeding *in forma pauperis* ("IFP"). ECF No. [8]. Therefore, the Court must screen the Complaint under 28 U.S.C. § 1915(e)(2). *See Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003) (per curiam). Under § 1915(e)(2)(B)(i), courts may dismiss frivolous claims that are "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Pullen v. Sec'y, Dep't of Corr.*, No. 19-11797-C, 2019 WL 5784952, at *1 (11th Cir. Sept. 4, 2019) ("An action is frivolous if it is without arguable merit either in law or fact." (quoting *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002))).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under § 1915(e)(2)(B)(ii), the court must dismiss any IFP action when the prisoner's complaint fails to state a claim on which relief may be granted. The same standards govern dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and dismissal for failure to state a claim under § 1915(e)(2)(B)(ii). *See Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). Thus, under § 1915(e)(2)(B)(ii), the court must dismiss a complaint that fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the complaint under § 1915(e)(2)(B)(ii), the Court takes the allegations as true and construes them in the most favorable light. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003); *see also Maps v. Miami Dade State Att'y*, 693 F. App'x 784, 785 (11th Cir. 2017) (per curiam). Furthermore, courts hold complaints that *pro se* prisoners file to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Yet a district court is not required to "rewrite an otherwise deficient pleading in order to sustain an action." *Rodriguez v. Scott*, 775 F. App'x 599, 602 (11th Cir. 2019) (per curiam) (citation and internal quotations marks omitted).

Rule 10(b) further requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Notwithstanding the leniency afforded to *pro se* litigants, it does not permit the litigant to file an impermissible "shotgun" pleading.[3] "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the

---

[3] The Eleventh Circuit has identified four rough types or categories of shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). The most common type of shotgun pleading is one "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The next most common type is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* The third type of shotgun pleading is one that does not separate into a different count each cause of action or claim for relief. *Id.* Fourth, and finally, there is the relatively rare shotgun pleading that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Id.*

claims against them and the grounds upon which each claim rests." *Id.*

## III.    DISCUSSION

Plaintiff sues various federal Defendants for violating his constitutional rights. In *Bivens*, the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers" for violations of certain constitutional rights. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). However, "*Bivens* only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities." *See Sharma v. Drug Enforcement Agency*, 511 F. App'x 898, 901 (11th Cir. 2013) (citing *Malesko*, 534 U.S. at 69-71). Furthermore, a *Bivens* action cannot be brought directly against the United States or against a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 472 (1994). Additionally, the Eleventh Circuit has held that Congress did not unequivocally waive the United States' sovereign immunity through the Religious Freedom and Restoration Act of 1993 ("RFRA"). *See Davila v. Gladden*, 777 F.3d 1198, 1210–11 (11th Cir. 2015). Therefore, the RFRA does not authorize suits for money damages against the United States or against federal officers in their official capacities. *Id.*

Moreover, "[C]ourts generally apply § 1983 law to *Bivens* cases." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (per curiam) (alteration added; citations omitted). However, the scope of the *Bivens* remedy is limited. Historically, the Supreme Court has applied *Bivens* remedies to only three categories of constitutional claims: (1) Unreasonable searches and seizures under the Fourth Amendment (*Bivens*); (2) Gender discrimination under the Due Process Clause of the Fifth Amendment (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) Cruel and unusual punishment under the Eighth Amendment (*Carlson v. Green*, 446 U.S. 14 (1980)). *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017).

Plaintiff does not clearly delineate his claims. After review of the Amended Complaint,

construing the allegations liberally as afforded *pro se* litigants under *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam), Plaintiff appears to assert the following claims: (1) Sixth Amendment right to counsel against FBI Agent John Gill; (2) *Brady* violation for withholding evidence against the USAO; (3) First Amendment access to the courts for the Walsh Assignment against the FBI and the USAO; (4) First Amendment retaliation for placement in SHU against the FBI and USAO; (5) Eighth Amendment conditions of confinement and limiting food rations against FDC Warden Eugene Carlton and Captain J. Weirich; (6) RFRA and First Amendment free exercise of religion claim against FDC administrative staff; and (7) harassment against Captain J. Weirich. *See generally* ECF No. [36]. Plaintiff only seeks compensatory damages.

Plaintiff's Amended Complaint is due to be dismissed for several reasons.

## A. Shotgun Pleading

First, the Amended Complaint is subject to dismissal as a quintessential shotgun pleading. Because the Amended Complaint identifies more than one Defendant, Plaintiff is required to adhere to Fed. R. Civ. P. 10. Pursuant to Fed. R. Civ. P. 10(b), "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." To promote clarity, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). Here, Plaintiff's allegations are unclear because he raises claims in narrative form against multiple Defendants that are not separated by counts. Plaintiff's failure to do so also reveals that the Amended Complaint qualifies as the third category of shotgun pleading for not separating into different paragraphs each count or claim for relief. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Therefore, the Amended Complaint must also be dismissed for failing to comply with Fed. R. Civ. P. 10(b). *See Barmapov*, 986 F.3d at 1326 ("Because Barmapov's second amended complaint is 'replete with conclusory, vague, and immaterial' allegations, a defendant

who reads the complaint would be hard-pressed to understand 'the grounds upon which each claim against him rests.'") (citations omitted). Plaintiff has previously been given the opportunity to cure deficiencies, *see* ECF No. [4], but he has failed to do so. For this alone, the Amended Complaint is due to be dismissed.

### B.  Official Capacity and Supervisory Liability

As a preliminary matter, "*Bivens* only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities." *Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 901 (11th Cir. 2013) (per curiam) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69-71 (2001)). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). Congress has the power to waive this immunity and consent to suit, but such waivers must be explicit. *In re Custom Contractors, LLC*, 745 F.3d 1342, 1347 (11th Cir. 2014). Where there is no express waiver, a "jurisdictional bar" exists, and courts have no power to proceed on a claim asserted against the federal government or one of its agencies. *Id.*; *see Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985, 991 (11th Cir. 2020) ("[W]hile [a *Bivens* action] may provide a mechanism to sue individual federal *agents* for their constitutional violations, it does not provide a cause of action against federal *agencies*." (citing *Meyer*, 510 U.S. at 484-86) (alterations added; emphasis in original)).

A plaintiff's official capacity claims against an individual defendant are due to be dismissed unless he can establish supervisor liability. Supervisory officials are not liable through respondeat superior or vicarious liability for the unconstitutional acts of subordinates. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). However, "a supervisor may be liable under *Bivens* if 'a reasonable person in the supervisor's position would have known that his conduct infringed upon the constitutional rights of the plaintiff . . . and his conduct was causally related to the

constitutional violation committed by his subordinate.'" *Fulwood v. Fed. Bureau of Prisons*, 568 F. App'x 753, 756 (11th Cir. 2014) (per curiam) (citation omitted). "A causal connection may arise when a history of widespread abuse puts a responsible supervisor on notice of the need to correct an alleged deprivation, but he fails to; when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights; or when facts suggest that a supervisor orders his subordinates to act unlawfully or knows they will act unlawfully and fails to stop them." *Id.* (citation and internal quotation marks omitted). Here, Plaintiff has not alleged the existence of any custom, policy or practice, or a history of widespread abuse. Thus, Plaintiff's official capacity claim against the named Defendants is dismissed. To the extent that Plaintiff alleges any personal involvement by Defendants, those allegations are addressed below.

### C.  Misjoinder of Claims

Notably, Plaintiff raises numerous constitutional violations beginning in 2018 through on or about March 2021. Specifically, in 2018, he alleges violations that occurred during his arrest; in 2019, while confined at the Bureau of Prisons, he alleges a "Walsh Assignment" was unlawfully placed on his email account; in 2020, Plaintiff alleges he was unlawfully placed in the SHU; in 2021, Plaintiff claims prison officials violated his right to religious freedom. *See generally* ECF No. [36]. Clearly, events occurring in 2018 during the arrest are not related to events occurring while confined at the BOP in 2019. More importantly, the allegations that in 2021 Plaintiff's freedom of religion rights were being violated do not relate to any of the prior incidents complained of.

Under Fed. R. Civ. P. 20(a)(2), Defendants may be joined in one action if any right to relief is asserted against them "jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all [defendants] will arise in the action." Fed. R. Civ. P. 20(a)(2) (alteration

added). The joinder of parties is generally encouraged in the interest of judicial economy, subject to the fulfillment of two prerequisites: (1) the persons who are joined as defendants must be interested in claims that arise out of the same transaction or occurrence, or series of transactions or occurrences; and (2) all the parties joined must share in common at least one question of law or fact. *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled other grounds, Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003)).

The Eleventh Circuit has explained that the definition of "transaction" is flexible and can comprehend a series of many occurrences that depend less upon the immediateness of their connection and more upon the logical relationship. *Id.* (citation omitted). All "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. *Id.* (citation omitted). The second requirement under Rule 20 is that "*some* question of law or fact be common to all parties," but "does not require *all* questions of law and fact raised by the dispute be common." *Id.* at 1324 (emphasis in original; citations omitted). It follows that under Rule 20(a)(2), a plaintiff may not bring multiple claims against multiple parties in a single action unless the legal nexus is demonstrated with respect to all defendants named in the action.

Further, although joinder is "strongly encouraged" and the rules are construed generously toward "entertaining the broadest possible scope of action consistent with fairness of the parties," *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966), district courts enjoy equally broad discretion to sever parties based on misjoinder, *Alexander*, 207 F.3d at 1323; *see also Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002) (per curiam) ("The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices.").

Given the nature and time span involving the complained of events, Plaintiff cannot join in

this action his claims regarding his arrest with his claim regarding his placement in the SHU and his 2021 denial of religious beliefs claims as there is no "logical relationship between the claims." *See Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir.1998) (citation and internal quotation marks omitted). Therefore, the Amended Complaint must be dismissed without prejudice to refiling three separate actions. Nonetheless, as discussed below, the Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted.

### D. First Amendment Claims

Plaintiff raises several different First Amendment claims. He alleges that he was denied access to the courts and the ability to confer with his defense counsel when the USAO and FBI gave him a "Walsh Assignment" and placed him in the SHU. ECF No. [36] at 13. Plaintiff states that his SHU placement was retaliatory. *Id.* at 13-14. Plaintiff also alleges that FDC administrative staff violated his free exercise rights when he was denied unleavened bread and red wine to observe Passover as a Jehovah's Witness. *Id.* at 15. The Supreme Court has never recognized a First Amendment *Bivens* claim. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.").

"Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" *Iqbal*, 556 U.S. at 676 (quoting *Malesko*, 534 U.S. at 68)). Before expanding *Bivens* liability, courts must engage in a two-step inquiry. *Johnson v. Burden*, 781 F. App'x 833, 836-37 (2019) (per curiam). First, the Court must determine whether the claim presents a new *Bivens* context, and if so, the Court must determine whether "there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Bivens*, 403 U.S. at 396).

1.    *Retaliation Claims*

As to the retaliation claims, the Court need not delve into the special factors analysis because Plaintiff's allegations are insufficient. A plaintiff must establish three elements to prevail on a retaliation claim. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). The plaintiff must prove that: (1) "his speech or act was constitutionally protected"; (2) "the defendant's retaliatory conduct adversely affected the protected speech"; and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id.* (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). To establish causation, the plaintiff must show that the defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir.2008).

A prisoner's First Amendment rights are not coextensive with those of free citizens. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001) ("We have thus sustained proscriptions of media interviews with individual inmates, prohibitions on the activities of a prisoners' labor union, and restrictions on inmate-to-inmate written correspondence." (citations omitted)). Further, it is well established that a prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procuncier*, 417 U.S. 817 822 (1974).

Here, Plaintiff has not alleged that he engaged in constitutionally protected speech, a prerequisite to a retaliation claim. Nor has he alleged any causal connection between an adverse effect on his protected speech and the alleged retaliatory SHU placement. *See Davis v. United States*, 272 F. App'x 863, 867-68 (11th Cir. 2008) (finding federal prison official's decision to place prisoner in SHU for several weeks not retaliatory where prisoner disciplined after he became belligerent and threatening upon learning of a cell transfer with an incompatible cellmate). Plaintiff states only that he was told he was placed in the SHU so that the FBI and USAO could monitor

his communication activities. ECF no. [36] at 13. Plaintiff's allegations do not state a cognizable retaliation claim.

### 2. *Access to the Courts Claim*

Similarly, Plaintiff's access to the courts claims against the USAO and the FBI are conclusory and do not contain adequate factual content to state a cognizable claim. It is well established that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). A violation occurs when a prison thwarts a prisoner's ability to seek a claim for redress. *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (per curiam). Further, "actual injury" is a required constitutional prerequisite. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Plaintiff states that the Walsh Assignment was placed on his BOP email account, hindering communication with his defense counsel. ECF No. [36] at 13. Plaintiff did not allege an actual injury. It is also not clear how the "Walsh Assignment" interfered with Plaintiff's ability to communicate with his defense attorney. In fact, Plaintiff does not allege that his communication with his defense attorney was cut off—he states he was still able to communicate with his defense counsel via legal visits, calls, and letters. *Id.* Plaintiff's allegations are insufficient to state an access to the courts claim. *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (denying access to the courts claim where allegations of actual injury conclusory and plaintiff did not state how opening his legal mail outside his presence compromised his legal cases).

### 3. *The RFRA and Free Exercise of Religion*

Plaintiff alleges that he is a Jehovah's Witness and his right to free exercise of his religion was violated when the FDC administrative staff denied his request for unleavened bread and red wine in order to observe Passover. ECF No. [36] at 15. Administrative staff informed him his religion was not approved for such items, but he was permitted to have his Bible. *Id.*

Congress enacted the RFRA "in order to provide very broad protection for religious

liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2760 (2014). The RFRA prohibits the "government" from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability," unless the "government" can "demonstrate[] that application of the burden to the person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). The statute explicitly provides a cause of action against the "government" for "appropriate relief." *Id.* § 2000bb-1(c). "Government" is defined as "includ[ing] a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." *Id.* § 2000bb-2(1).

The RFRA "prohibits '[g]overnment' from [substantially burden[ing]' a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *City of Boerne v. Flores*, 521 U.S. 507, 515-516 (1997) (quoting 42 U.S.C. § 2000bb *et seq.*; brackets in original). Thus, the plain language of the RFRA establishes that a plaintiff may bring claims for "appropriate relief" against "persons," either federal "officials" or those acting under color of federal law, whose individual conduct substantially burdens one's religious exercise. Nothing in the text of the RFRA requires that the "official" or "person must be acting in furtherance of an official policy." *See Mack v. Warden, Loretto FCI*, 839 F.3d 286 (3d Cir. 2016).

Courts have held that the RFRA is permitted against individual officers, but to establish liability, a plaintiff must show that his ability to practice his faith was substantially burdened. *See Turner v. Safley*, 482 U.S. 78, 85 (1987); *Cheffer v. Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995). The Eleventh Circuit has defined a "substantial burden" as a burden that either compels a person to engage in conduct that is forbidden by his religion or conduct that prohibits a person from

engaging in conduct required by his religion. *Cheffer*, 55 F.3d at 1522. Governmental interference must be more than an inconvenience; the burden must be substantial and significantly interfere with a plaintiff's practice of his religious beliefs. *See Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989) (noting that *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987) found prison regulations valid in part because the prisoners were permitted to participate in other Muslim religious ceremonies).

As applied, Plaintiff refers only to the FDC administrative staff and has not named any individual official in his Amended Complaint. This deficiency alone renders his free exercise claim under the RFRA deficient. Further, Plaintiff has not adequately alleged that the practice of his religion was "substantially burdened" by denial of red wine and unleavened bread to observe Passover.

Therefore, his First Amendment and RFRA claims are dismissed for failure to state a claim upon which relief can be granted.

### E.   Due Process Violation

Plaintiff alleges the USAO and FBI violated his Fourteenth Amendment due process rights by giving him a "Walsh Assignment," limiting his ability to communicate with his defense counsel. As a preliminary matter, Plaintiff's Fourteenth Amendment challenge cannot be sustained in this *Bivens* action. Fourteenth Amendment claims are only justiciable against state actors, but Plaintiff only sues federal actors. Thus, his Fourteenth Amendment claim is dismissed.

Even if Plaintiff had alleged a violation of his Fifth Amendment due process rights, the result would be the same. "To state a cognizable claim for the denial of due process in connection with prison discipline, a prisoner must show a protected liberty interest of which he was deprived without minimum procedural protections." *Dean-Mitchell v. Reese*, 837 F.3d 1107, 1112 (2016) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974)). Plaintiff did not allege that he was

prevented from communicating with his defense counsel, only that his ability to communicate with defense counsel was limited to handwritten letters, legal calls, and visits. Plaintiff has not alleged a protected liberty interest.

Furthermore, as previously summarized, Plaintiff has failed to allege either the existence of a policy or custom or the personal involvement of an individual prosecutor or FBI Agent in designating Plaintiff with a "Walsh Assignment." *See Iqbal*, 566 U.S. at 677 ("[E]ach Government official . . . is only liable for his or her own misconduct." (alterations added)). Thus, Plaintiff's due process claims against the FBI and USAO are not cognizable and must be dismissed.

### F. Sixth Amendment and *Brady v. Maryland* Claims

Plaintiff alleges FBI Agent John Gill violated his Sixth Amendment right to counsel. Plaintiff states that following his arrest, he invoked his right to counsel. With this knowledge, FBI Agent John Gill and non-party Miami-Dade Detective Parker approached Plaintiff in his holding cell and threatened the safety of Plaintiff and his family. ECF No. [36] at 12. Plaintiff then gave a "forced/coerced" confession to Gill to a pending state court case. *Id.* Plaintiff further alleges that the FBI and USAO violated *Brady v. Maryland*, 373 U.S. 83 (1963) because they withheld body camera footage of Plaintiff's interrogation following his arrest. ECF No. [36] at 13. Both these claims challenge the validity of federal conviction.

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a plaintiff may not bring a damages action under *Bivens* if a judgment in the plaintiff's favor would necessarily imply the invalidity of his conviction or sentence. *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir.1995) (holding that *Heck* applies both to 42 U.S.C. § 1983 actions filed by state prisoners and *Bivens* actions filed by federal prisoners). Thus, unless Plaintiff can demonstrate that his conviction or sentence has already been invalidated, his complaint must be dismissed. *Heck*, 512 U.S. at 487. But when "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment

against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (emphasis in original; footnote call number omitted). For example, "[b]ecause an illegal search or arrest may be followed by a valid conviction, a successful [*Bivens*] action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction. As a result, *Heck* does not generally bar such claims." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (alterations added; footnote call number omitted). Nevertheless, not all constitutional claims fit this exception to *Heck*, rather, courts "must look both to the claims raised . . . and to the specific offenses for which the . . . claimant was convicted." *Id.* at 1160 n.2 (alterations added).

Because Plaintiff has not demonstrated that his conviction has been invalidated, let alone identified charges, case number, or court, *Heck* bars Plaintiff's claims. Should Plaintiff successfully invalidate his conviction (or convictions), he may then institute a civil rights action for damages in federal court. Thus, Plaintiff fails to state a claim upon which relief can be granted arising from a Sixth Amendment or *Brady* violation. The claims are dismissed.

### G.  Eighth Amendment Claims

Plaintiff alleges that Captain J. Weirich and Warden Eugene Carlton violated his Eighth Amendment rights in several ways.

Prison officials have a duty under the Eighth Amendment to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment violation, a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Under the "objective component," a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. *Id.* The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or

safety. *Id.* The Eighth Amendment only guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. *Id.* Restrictive or even harsh conditions alone do not rise to the level of an Eighth Amendment violation. *Id.*

Second, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. *Id.* "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (alteration added; internal quotation marks omitted).

"Under the Eighth Amendment, a prisoner is only entitled to reasonably adequate food." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x. 862, 865 (11th Cir. 2008). "A prison does not violate the Eighth Amendment by feeding a prisoner a minimal amount of food for a limited number of days." *Id.* (citing *Novak v. Beto*, 453 F.2d 661, 665, 668 (5th Cir. 1971)).

Plaintiff states that Warden Eugene Carlton and Captain J. Weirich limited his food rations in the SHU and, as a result, his weight has dropped from 155 lbs to 119 lbs. ECF No. [36] at 14. Plaintiff's claim as plead cannot survive screening. Plaintiff has not alleged that Defendants had a sufficiently culpable state of mind or that they knew Plaintiff faced a serious risk of harm from food rationing. It is also unclear from the Amended Complaint if Plaintiff's food rations were limited as a result of a SHU policy.

The deprivation of basic sanitary conditions can constitute an Eighth Amendment violation. *Brooks v. Warden*, 800 F.3d 1295, 1304 (11th Cir. 2015). Additionally, an Eighth Amendment violation may arise from allegations regarding the temperature to which a prisoner is exposed in prison, and the severity and duration of the exposure are relevant to the analysis. *Chandler*, 379 F.3d at 1294-95. However, "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Id.* at 1295.

19

1.    *SHU Conditions*

Plaintiff alleges that the SHU conditions are "absolutely inhumane" and complains that the showers are covered in mold, there is not enough hot water, and his access to hygiene products is limited causing acne breakouts and hair loss. ECF No. [36] at 14. He also complains that the linens in his cell have not been changed in five months, and that the "frigid" cell temperatures put him at a risk of catching pneumonia. *Id.*

Plaintiff's allegations constitute "mere discomfort" and do not rise to the level of a constitutional violation. *See Chandler*, 379 F.3d at 1295. Furthermore, he has not alleged Warden Eugene Carlton's or Captain J. Weirich's personal involvement in the deprivation of basic sanitary conditions. Therefore, this claim must be dismissed.

2.    *Failure to Keep Safe from Harm Claim*

Next, Plaintiff alleges that Captain J. Weirich failed to protect him when he ordered a mentally handicapped inmate, who had recently been in a fight, to be housed with Plaintiff. ECF No. [36] at 14. The next day, Plaintiff told an officer he felt threatened and the inmate was removed. *Id.* After Plaintiff was removed from the cell, he told Captain J. Weirich he could have been hurt, and he responded by laughing and telling Plaintiff it was not a big deal and that no one cares. *Id.* When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam). A constitutional violation occurs when an institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively "sufficiently serious" harm. *Farmer*, 511 U.S. at 834. A danger of risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Id.* at 837 (alterations added). Once it is established that an institutional

official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm. *Id.* at 842 (alteration added).

Setting aside the issue of whether Captain J. Weirich actually ordered the inmate to share a cell with Plaintiff, Plaintiff has not alleged that Captain J. Weirich was deliberately indifferent to a known risk of harm. Plaintiff states that he informed another officer he felt threatened and he was immediately removed from the cell. Thus, this claim must be dismissed.

3.   *Verbal Threats*

Finally, Plaintiff alleges that Captain J. Weirich refused to allow him to make an emergency call to his family after his grandfather passed away. ECF No. [36] at 14. Plaintiff does not state a constitutional violation. *See Hernandez*, 281 F. App'x at 866 ("[V]erbal abuse alone is insufficient to state a constitutional claim." (alteration added)). Thus, this claim must be dismissed.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   The Amended Complaint, **ECF No. [36]**, is **DISMISSED** without prejudice for failure to state a claim.

2.   To the extent not otherwise disposed of, all pending motions are **DENIED** as moot.

3.   The Clerk of Court is directed to **CLOSE** this case.

Case No. 21-cv-21634-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 7, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Matthew Alexander King, *Pro Se*
17576-104
Marion-USP
United States Penitentiary
Inmate Mail/Parcels
Post Office Box 1000
Marion, IL 62959